**IN THE UNITED STATES DISTRICT COURT**
**EASTERN SECTION OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| AARON MILES BARE, | ) | |
| on behalf of himself and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: _____ |
| | ) | THIS IS THE FIRST APPLICATION FOR |
| CARDINAL HEALTH, INC., | ) | EXTRAORDINARY RELIEF |
| | ) | |
| Defendant. | ) | JURY DEMANDED |

_____

**VERIFIED COMPLAINT FOR TERMPORARY RESTRAINING ORDER,**
**PRELIMINARY AND PERMENANT INUNCTIVE RELIEF, AND FOR DAMAGES**

_____

For his complaint against the Defendant, Plaintiff alleges and avers the following:

**EXIGENCIES JUSTIFYING A TEMPORARY RESTRAINING ORDER**

1.      This action is brought by the Plaintiff and all other similarly situated individuals to remedy the Defendant's pattern of unlawful discrimination against employees who requested religious exemptions and accommodations from the Defendant's COVID-19 Vaccine Mandate.

2.      In his Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff seeks a Temporary Restraining Order ("TRO") against the Defendant's discriminatory, unlawful and unconscionable refusal to grant Plaintiff a religious exemption and accommodation for his sincerely held religious beliefs which prohibits Plaintiff from complying with the Defendant's  policy  mandating that all of its salaried employees receive one form of the COVID-19 vaccine (hereinafter  "Mandatory COVID-19 Vaccination Policy").

3.     **Unless this Court intervenes and grants a TRO prior to December 6, 2021, Defendant will terminate the Plaintiff and all other similarly situated employees on December 6, 2021, causing incalculable and irreparable harm to them and their families, as described herein, including potential homelessness, lack of medical care, lack of food and shelter, disrupted education for their children, financial ruin and harms to their physical, mental and emotional health.**

4.     Plaintiff is a healthcare professional who has sincerely held religious beliefs against taking the COVID-19 vaccines because they were either developed from, or tested with, aborted fetal cell lines or for other religious reasons explained to the Defendant. Because of the Defendant's unlawful actions in denying all or virtually all meritorious exemption requests, Plaintiff is faced with an immediate "choice" to either (a) receive the COVID-19 vaccination in direct violation of their conscience and sincerely held religious beliefs, or (b) be terminated from his employment with the Defendant as a consequence of exercising his fundamental and statutory rights to refuse administration of the COVID-19 vaccines. "Such a Hobson's choice is actually no choice at all." *Smith v. Grams*, 556 F.3d 1037, 1046 (7th Cir. 2009) (emphasis added). Such a sword of Damocles should never be allowed to hang over the head of a citizen of a country founded on religious freedom. See U.S. Const., am. I (Congress shall pass no law respecting an establishment of religion; nor prohibiting the free exercise thereof . . ..).

5.     Defendant summarily denied Plaintiff's religious exemption request. Plaintiff's request was based upon the fact that his religious beliefs prevent him from taking any vaccine, such as the COVID-19 vaccines which have been developed or tested with aborted fetal tissue. Should Plaintiff take said vaccine, he believes he would be committing a sin based upon the teachings of his church and the Holy Bible, King James Version. It is utterly immaterial to

Plaintiff's request for a religious exemption what church he attends; it only matters whether he has a sincere belief that taking certain actions places him in danger of committing a sin against his God. The Plaintiff is a citizen and resident of the only nation in the world founded upon principals of manifest destiny and religious freedom; yet his employer, who is not allowed to terminate him for sincerely held religious beliefs, has decided to enact policies which would make any communist or king of the old world proud indeed. Defendant summarily denied Plaintiff's request, and upon information and belief, other employee's religious exemption requests without the chance to appeal the decision. **See Exhibits A and B**.

6.      Plaintiff and all other similarly situated employees that had their religious exemption requests denied by the Defendant have been given until December 6, 2021 to make the decision whether to comply with the Defendant's Mandatory COVID-19 Vaccination Policy.

7.      Plaintiff and all other similarly situated employees stand to suffer severe and irreparable harm absent a TRO. Plaintiff and other employees depend heavily on their employment with the Defendant to support themselves and their families. Plaintiff is the father of seven young children. Plaintiff, and perhaps other employees of the Defendant, is the sole provider for his family and the loss of employment would be devastating. As attested to further below, the harms which would result absent a TRO include, but are not limited to, homelessness, loss of medical insurance and the ability to provide urgent medical care for Plaintiffs and family members, and inability to pay for their children's educations. Plaintiff, and others similarly situated, are also being subjected to harassment, intimidation and threats as a result of their religious declination of vaccination, which is causing anxiety and stress for Plaintiff and his family.

8.      A TRO is needed now to prevent the irreparable harm to Plaintiff's sincerely held religious beliefs and his cherished occupations, mission and life calling to care for others. Absent

a TRO, Plaintiff will be forced to violate his sincerely held religious beliefs or face adverse employment action from Defendant.

9.     Plaintiff has earnestly, honestly, and in good faith sought religious exemptions and reasonable accommodations from Defendant's Mandatory COVID-19 Vaccination Policy, but has been summarily rejected. **Exhibits A and B**.

10.     Plaintiff has complied with all requirements for seeking an accommodation and exemption based upon his sincerely held religious beliefs, and otherwise complied with all of the requirements Defendant established for seeking a religious exemption from the Mandatory COVID-19 Vaccination Policy. Indeed, Plaintiff has scratched and clawed to obtain the relief he seeks without judicial intervention. Those efforts failed and a TRO and preliminary injunction is the only mechanism by which Plaintiff's sincerely held religious beliefs may be protected and accommodated prior to the suffering of immediate and irreparable injury.

11.     Plaintiff does not seek to harm anyone, nor does he request a license to roam about uninhibited as though no health threat existed. Plaintiff merely seeks to protect his sincerely held religious beliefs not to receive a medical product created with or tested upon aborted fetal cell lines while being afforded the opportunity to continue his employment, service to others and life calling. Plaintiff is willing to abide by protections that have been espoused as sufficient to protect against COVID-19, namely wearing a mask, self-monitoring for symptoms, voluntary reporting of potential symptoms, and reasonable testing requirements. These mechanisms plainly provide a sufficient alternative to forced vaccination in violation of sincerely held religious beliefs.

12.     Several throughout the nation, including this District, have already issued injunctive relief, including temporary restraining orders, to plaintiffs who are threatened with adverse employment consequences because of their religious or conscience-based objections to

COVID-19 vaccines: *Velvet Darnell et. al. v. Quincy Physicians and Surgeons Clinic, S.C. and Blessing Corporate Services, Inc.*, Case No. 2021 MR 193 (18th Judicial Cir. Adams County, IL October 1, 2021) (granting TRO under Illinois Health Care Right of Conscience Act, and enjoining healthcare provider from taking adverse action against healthcare employees declining COVID-19 vaccination on religious and conscience grounds); *David Sambrano et. al. v. United Airlines, Inc.*, Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021); *Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions and noting that "Title VII does not demand mere neutrality with regard to religious practices . . . rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII 'requires otherwise-neutral policies to give way to the need for an accommodation." (emphasis added)); *We The Patriots USA, Inc. v. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate for its failure to allow for religious accommodations); *Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021) (allowing the preliminary injunction to stand against a University's failure to accommodate student athletes with sincerely held religious objections to the COVID-19 vaccine mandate and noting that "The University put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports. . . . By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights." (emphasis added)); *Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable

accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has not received a religious or medical accommodation"); *BST Holdings, LLC, et al. v. Occupational Safety and Health Administration, et al.* No. 21-60845 (5th Cir. Ct. App. Filed Nov. 12, 2021)(TRO granted and stay of Federal Govenrment Vaccine Mandate to employers because Petitioners are likely to succeed on permanent injunction).

13.     Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Emergency Use Authorization statute in the United States Code, protect the right of individuals to refuse administration of an unwanted medical product when acceptance of such product would violate their sincerely held religious beliefs and the exercise of the same. Defendant's Mandatory COVID-19 Vaccination Policy, including its refusal to grant meritorious religious exemption requests, ignores these fundamental protections for Plaintiff's sincerely held religious beliefs, and this Court should enjoin the policy immediately, to protect Plaintiff, and others similarly situated, from imminent irreparable harm.

## **PARTIES**

14.     Plaintiff is a Senior Pharmacist with the Defendant who submitted a signed, written request for a religious exemption and accommodation from Defendant's Mandatory COVID-19 Vaccination Policy, but Defendant has refused to provide a reasonable accommodation. **Exhibit A**. Plaintiff is the sole contributor to his family's income. Plaintiff through his employment provides his family's benefits including vision, dental and health. Plaintiff has seven minor children

who depend on his employment with Defendant. The Plaintiff's employment would be devastating to his family – not only financially, but medically, emotionally and physically.

15.     Other similarly situated Plaintiffs are those unknown employees of Defendant who are similarly situated with the predicament that the Plaintiff finds himself in.

16.     Plaintiff's initial religious exemption application were denied on the basis of a non-descript "evidence-based criteria" and each of them appealed those decisions with additional evidence only to be denied any reasonable accommodation for their sincerely held religious beliefs.

17.     Plaintiff has filed or is filing a claim with the Equal Employment Opportunity Commission, accompanied by attorney requests for immediate right to sue letters.

18.     Defendant, Cardinal Health, Inc., is a for-profit corporation incorporated under the laws of the State of Ohio with its principal place of business at 7000 Cardinal Place, Dublin, Ohio 43017.

## JURISDICTION AND VENUE

19.     This action arises under the laws of the United States, specifically 21 U.S.C. §360bbb-3 and 42 U.S.C. § 2000e, et seq.

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, and 1343.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

22.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

23.     This Court is authorized to grant Plaintiff's prayer for a temporary restraining order and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

24.     This Court is authorized to grant Plaintiff's prayer for relief regarding damages pursuant to Rule 54 of the Federal Rules of Civil Procedure as applicable under Fed. R. Civ. P. 69.

## GENERAL ALLEGATIONS

### A.  DEFENDANT'S MANDATORY AND DISCRIMINATORY COVID-19 VACCINATION POLICY.

25.     On August 21, 2021, Defendant announced a policy mandating COVID-19 vaccines for all of its salaried employees. **See Exhibit C**.

26.     Defendant announced, through a spokesperson, the following:

As the days and months of the calendar change, so too does what we understand about COVID-19. I'll be honest, it seems like it was a week ago that we made a decision we never imagined we'd make – to require masks. And that wasn't the first or last decision of that kind.

All along we've followed some basic principles like keeping you safe and making sure we could fulfill our essential role in healthcare and we've leaned heavily on science.

The delta variant is reminding us that we are still battling the COVID-19 pandemic and that the virus continues to change to survive. We must do the same. The delta variant is surging in many places around the world and causing vaccinated and unvaccinated alike to reassess yet again. With the support of Dr. Soden and information about what other large companies are doing, we've made some decisions.

Today I'm announcing how we're adapting to keep you safe as we continue to manage through this pandemic.

First, I'm sure you have noticed mask requirements being put back in place in many locations. Beginning Monday, August 9, all employees, regardless of vaccination status, in all U.S. locations must wear masks in common areas or when you are not able to maintain physical distance. We understand many of our locations have already implemented masks for all our employees and in some locations we won't be able to mandate due to local laws, but we strongly encourage you to wear masks so we can keep you safe and maintain the integrity of our operations.

Second, science tells us that the only way to defeat the virus is through vaccination. The longer we continue with a portion of our population unvaccinated, the more likely we are to encounter stronger delta surges and even more potent variants in the future. The time is now and the need to be vaccinated is urgent.

To do our part as members of the healthcare community, we are requiring the following U.S. employee groups to be FULLY vaccinated by October 4, 2021:

·       All salaried employees
·       Office based employees (onsite full time or onsite flex) or any employee planning to go to a Cardinal Health location
·       All Sales team members
·       Anyone required to travel for business
·       Anyone planning to go to a customer location

At this time, employees working in distribution centers, manufacturing plants and hourly employees working from home will only be required to show their vaccination status. Although not required, we urge everyone to get the vaccine.

A few additional things to note:
·       We acknowledge that there are a small number of employees who cannot get the vaccine due to medical issues or religious reasons. We will have an interactive process so employees can request a medical or religious exemption and will launch this alongside our vaccine documentation collection process.
·       We've chosen to use Workday to collect COVID vaccination records and will follow up as we finalize the process.
·       Because of how important getting the COVID vaccine is for your health and safety, we are adding it to our 2022 health premium discount. We'll share additional details on what this means to you in the coming weeks.

Third, we are delaying the full reopening of our office locations until October 4. If you've been working onsite at one of the locations or want to begin working onsite, we are happy to have you so as long as you follow the mask protocol for your site. We're continuing with the same protocols we've had throughout much of the pandemic so the environment is safe, providing you do your part by wearing a mask and staying home when you don't feel well.

Lastly, I want to reiterate a few protocols that are not changing at this time.
·       We are keeping our travel guidance as is. All travel should be related to an important business need or for customer interaction.
·       We are maintaining the 50% capacity limits in conference rooms and meeting spaces.
·       We'll keep our gathering limit at 100 attendees, on or offsite.

I know this is a lot to process and that you'll have a lot of questions. Please keep an eye on the COVID-19 microsite where we'll post information as it is available. And I encourage you to join us at the next Let's Chat scheduled for August 24 or send your feedback/questions to our Pandemic team.

Thank you for all you do and for supporting this decision in the interest of keeping our Cardinal Health family as safe as we can.


Be well,

**Exhibit C**.

27.    Defendant's Mandatory COVID-19 Vaccination Policy specifically states that the

"requirement applies to all Defendant All salaried employees, Office based employees (onsite full

time or onsite flex) or any employee planning to go to a Cardinal Health location … all sales team

members, anyone required to travel for business and anyone planning to go to a customer location

. . . ."

28.     The Mandatory COVID-19 Vaccination Policy further provides that the final

deadline to be "fully vaccinated" is December 6, 2021, to wit:

> All salaried employees will need to be vaccinated by <u>December 6</u>th to remain employed at
> Cardinal Health.  A timeline for hourly employees is being determined.
>
> Sorry if I confused the situation with my previous email.

**See Exhibit D**.

29.     In its Mandatory COVID-19 Vaccination Policy, Defendant purported to permit

employees to obtain religious exemptions from the mandate, but as explained further below, that

process was a sham, because Defendant never intended to grant exemptions or accommodations

for all or virtually all of its employees who request them.

30.     The Mandatory COVID-19 Vaccination Policy does not take into account

individuals who have already recovered from COVID-19 and thus have antibodies or natural

immunity, nor does it take into account alternative measures such as face coverings, personal

protective equipment, self-monitoring and reporting of symptoms, or periodic testing.

31.     Defendant's Mandatory COVID-19 Vaccination Policy contrasts with and flouts

the Federal Government's recent announcement that the Department of Labor is developing a rule

to require certain large employers to mandate vaccination or periodic testing for their employees.

Defendant does not provide a testing alternative for any of its employees, as the Federal

Government contemplates to be sufficient.

32.     The Mandatory COVID-19 Vaccination Policy also differs substantially from the

European Union's digital COVID-19 certificate, which considers the following as equivalent: (1)

a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) having previously recovered from

COVID-19. See EU Digital COVID Certificate, EUROPEAN COMMISSION, https://ec.europa.eu/info/live-work-travel-eu/coronavirus-response/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en

33. Defendant's refusal to exempt and accommodate its employees' sincerely held religious convictions is the product of Defendant's animus towards, and discrimination against, its employees because of their religious beliefs.

34. Defendant's religious animus and discrimination are further evidenced by the fact that, while Defendant requires its employees to be vaccinated and refuses to accommodate its religiously-objecting employees, Defendant does not require clients or visitors to be vaccinated, even though these individuals interact with Defendant's staff on a daily basis. If Defendant were concerned about potential "outbreaks" caused by unvaccinated people on its premises, Defendant would not exempt large groups of people on its premises, while refusing to exempt only employees who object to vaccination on religious grounds.

**B. DEFENDANT'S SHAM RELIGIOUS EXCEPTION PROCESS, AND ITS DISCRIMINATORY APPLICATION OF ITS MANDATORY COVID-19 VACCINATION POLICY.**

35. As mentioned above, Defendant's Mandatory COVID-19 Vaccination Policy provided employees, in theory but not in practice, the illusory ability to obtain a religious exemption from the vaccine mandate.

36. Those seeking religious exemptions were required to submit a "Request for Religious Exemption" form. **Exhibit A**.

37. Defendant asked employees to limit their responses indicating to them very clearly that Defendant was not seeking detailed explanations.

38.    In submitting Plaintiff's requests for religious exemption, the Plaintiff followed the directions given to him by Defendant, and complied fully with Defendant's purported requirements.

39.    Defendant provided the Plaintiff with no bases as to why his religious exemption was denied – only that it was denied because he traveled. **Exhibit B**.

40.    Defendant ultimately and uniformly denied Plaintiff's religious exemption request for no reason at all. **Id**.

41.    Defendant provided the Plaintiff with no opportunity to appeal or challenge in any way the denial of his religious exemption request. **Id**.

42.    It is clear from Defendant's denial, that Defendant never intended to grant any of these exemption requests to begin with, and that its entire exemption process was a sham. Indeed, Defendant's summary denial of abortion-related religious beliefs from consideration is unlawful.

43.    This point is further reinforced by Plaintiff's experience with a manager. On one occasion, a manager emailed Plaintiff and informed him that he would be hearing from a job recruiter solidifying the fact that Defendant intends to terminate the Plaintiff on December 6, 2021.

44.    Therefore, Defendant's provision for a religious exemption was a sham and its practice was to simply deny religious exemptions en masse with boilerplate language, for no reason at all and no ability to appeal or challenge the denial.

45.    As a result, Defendant failed to engage with the Plaintiff, and with all of its similarly situated employees, in good faith in the interactive process contemplated by Title VII.

## C.    PLAINTIFF, AND ALL OTHER IMILARLY SITUATED INDIVIDUALS, SINCERELY HELD RELIGIOUS BELIEFS.

46.    Plaintiff, and all other similarly situated individuals, all have sincerely held religious beliefs that preclude them from complying with the Mandatory COVID-19 Vaccination

Policy because of the connection between all three COVID-19 vaccines (in their origination, production, development, or testing), and the cell lines of aborted fetuses.

47.     A fundamental component of Plaintiff's sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

48.     Plaintiff's sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." 2 Timothy 3:16 (KJV).

49.     Because of that sincerely held religious belief, Plaintiff believes that he must conform his life, including his decisions relating to medical care, to the commands and teaching of Scripture.

50.     Plaintiff has sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception. See Psalm 139:13-14 ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made." (ESV)); Psalm 139:16 ("Your eyes saw my unformed substance; in your book were written, every one of them, the day that were formed for me, when as yet there was none of them." (ESV)); Isaiah 44:2 ("the Lord that made thee, and formed thee from the womb . . ." (KJV)); Isaiah 44:24 ("Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." (KJV)); Isaiah 49:1 ("The Lord hath called my from the womb; from the bowels of my mother hath he made mention of my name." (KJV)); Isaiah 49:5 ("the Lord that formed me from the womb to be his servant" (KJV)); Jeremiah 1:5 ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee." (KJV)).

51.     Plaintiff also has sincerely held religious beliefs that every child's life is sacred because they are made in the image of God. See Genesis 1:26-27 ("Let us make man in our image, after our likeness . . . So God created man in his own image; in the image of God created he him; male and female created he them." (KJV)).

52.     Plaintiff also has sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. See, e.g., Exodus 20:13 ("Though shalt not kill." (KJV)); Exodus 21:22-23 (setting the penalty as death for even the accidental killing of an unborn child); Exodus 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); Genesis 9:6 ("Whoso sheddeth a man's blood, by man shall his blood be shed: for in the image of God made he man." (KJV)); Deuteronomy 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); Proverbs 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood." (KJV)).

53.     Plaintiff has sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

54.     Plaintiff has sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred for Plaintiff to use a product derived from or connected in any way with abortion.

55.     Plaintiff's sincerely held religious beliefs, rooted in the above Scriptures, preclude him from accepting any one of the three currently available COVID-19 vaccines, because all three

vaccines were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

56. Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccines.

57. As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**."

See North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines (Apr. 20, 2021), available at https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (bold emphasis original).

58. The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**."

Louisiana Department of Public Health, You Have Questions, We Have Answers: COVID-19 Vaccine FAQ (Dec. 12, 2020), available at https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021) (emphasis added).

59. Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. Meredith Wadman, Vaccines that

use human fetal cells draw fire, Science (June 12, 2020), available at
https://science.sciencemag.org/content/368/6496/1170.full (last visited Aug. 2, 2021).

60.    Plaintiff also has sincerely held religious objections to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cell lines.

61.    As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein.**"

See North Dakota Health, COVID-19 Vaccines & Fetal Cell Lines (Apr. 20, 2021), available at
https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (emphasis added).

62.    The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines.

See Louisiana Department of Public Health, You Have Questions, We Have Answers: COVID-19 Vaccine FAQ (Dec. 12, 2020), available at https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021).

63.    Therefore, Defendant's pretext for excluding religious beliefs premised on the demonstrable and undeniable association between all three COVID-19 vaccines and aborted fetal cell lines was patently false, and the exclusion of those beliefs was unlawful and discriminatory.

64. Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiff's sincerely held religious beliefs compel him to abstain from obtaining or injecting any of these products into his body, regardless of the perceived benefit or rationale.

65. In addition, Plaintiff has sincerely held religious beliefs that his body is the temple of the Holy Spirit, and to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the Temple of the Holy Spirit. (See 1 Corinthians 6:15- 20 ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's." (KJV)).

66. While there may be some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines, Plaintiff's sincerely held religious beliefs compel him to adhere to the truth that the testing, development, production, or other connection to aborted fetal cell lines is morally and Scripturally unacceptable and an affront to Scripture's teachings that God values all human life, and that abortion – in all of its manifestations and with all of its so-called 'benefits' – is a grave sin in which Plaintiff cannot participate.

67. In addition to their sincerely held religious beliefs that compel them to abstain from any connection to the grave sin of abortion, Plaintiff has sincerely held religious beliefs that the

Holy Spirit – through prayer and the revelation of Scripture – guide them in all decisions they make in life.

68.     Plaintiff has sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for his sins, was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His Believers and to guide them in all aspects of their lives. See John 16:7 ("Nevertheless I tell you the truth, it is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you." (KJV)); John 14:26 ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you." (KJV)).

69.     Plaintiff has sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. See John 16:8,13 ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come." (KJV)).

70.     Plaintiff also has sincerely held religious beliefs that he shall receive all answers to his questions through prayer and supplication, including for decisions governing his medical health. See James 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); Mark 11:24 ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them." (KJV)); Philippians 4:6-7 ("but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all

understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); 1 John 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

71.     Through much prayer and reflection, Plaintiff has sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and Plaintiff has been convicted by the Holy Spirit in his beliefs that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

72.     Plaintiff has sincerely held religious beliefs that compel him to follow the teachings of the Holy Spirit, who has not given him peace or comfort to accept any of the three currently available COVID-19 vaccines.

73.     Plaintiff has sincerely held religious beliefs that he is being guided and instructed by the Holy Spirit not to accept any of the three currently available COVID-19 vaccines and that it would be a sin against God to do so.

74.     Plaintiff has shared these religious beliefs, and others, with Defendant, and has asked Defendant for exemption and reasonable accommodation for these beliefs, but Defendant has unlawfully and callously refused. **Exhibits A and B.**

**D.     PLAINTIFF, AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS, WILLINGNESS TO COMPLY WITH ALTERNATIVE SAFETY MEASURES.**

75.     Plaintiff can and will comply with all other reasonable alternatives to compliance with Defendant's Mandatory COVID-19 Vaccination Policy.

76.     Plaintiff is willing to and will comply with all requirements to wear a mask, if necessary, as a part of the reasonable accommodation for his sincerely held religious objection to Defendant's Mandatory COVID-19 Vaccination Policy.

77.    Plaintiff is willing to and will comply with surveillance testing protocols as part of his reasonable accommodation for his sincerely held religious objection to Defendant's Mandatory COVID-19 Vaccination Policy.

78.    Plaintiff is willing to and will comply with all self-monitoring, self-reporting, or other reasonable safety protocols to monitor and report any sign of symptoms or other issues, as part of his reasonable accommodation for his sincerely held religious objection to Defendant's Mandatory COVID-19 Vaccination Policy.

79.    Plaintiff is willing to and will comply with any reasonable request to accomplish his pursuit of obtaining a reasonable accommodation for his sincerely held religious objection to Defendant's Mandatory COVID-19 Vaccination Policy.

80.    Plaintiff is willing to and will comply with the same alternatives to vaccination that Defendant provided as accommodations to other employees, to employees with pregnancy and other medical conditions, and to visitors and patients of Defendant, all of whom are allowed to be at Defendant's premises and are not being purged and excluded as Defendant is doing to Plaintiff and numerous other employees similarly sitiuated as the Plaintiff that have requested religious exemptions.

## E.    IRREPERABLE INJURY TO THE PLAINTIFF, AND ALL OTHER SIMILALRY SITUATED INDIVIDUALS, FROM THE MANDATORY COVID-19 VACCAINATION POLICY.

81.    Absent a TRO and injunctive relief, and beginning on December 6, 2021, Plaintiff, and all other similarly situated individuals, will be subject to adverse employment action from Defendant. Plaintiff, and all other similarly situated individuals, will not be permitted to remain in their positions or any reasonably-similar position. Defendant will expel Plaintiff, and all other

similarly situated individuals, out of its facilities, and will terminate all or almost all of them seeking religious exemption to taking the COVID-19 vaccines.

82.     Absent a TRO and injunctive relief, Plaintiff, and all other similarly situated individuals, will be deprived of the statutorily protected rights to the exercise of their sincerely held religious beliefs.

83.     Despite being willing and capable of complying with all social distancing, testing, monitoring, and facial covering requirements (and all other reasonable requests arising from accommodation for their sincerely held religious beliefs), Plaintiff, and all other similarly situated individuals, are being discriminatorily targeted, singled out, and punished for the exercise of their sincerely held religious beliefs.

84.     Some of the harms which Plaintiff, and all other similarly situated individuals, will suffer absent a TRO include homelessness, lack of medical care, lack of food and shelter, disrupted education for their children, financial ruin, and harms to their physical, mental and emotional health.

### COUNT I – VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*

85.     Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-84 as if fully set forth herein.

86.     Title VII of the Civil Rights Act of 1964 prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs. See 42 U.S.C. §2000e-2(a).

87.     Plaintiff holds sincere religious beliefs that preclude him from receiving a COVID-19 vaccine.

88.     Plaintiff informed Defendant of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate. **Exhibit A**.

89.     Defendant has failed to engage in the interactive process with Plaintiff regarding his religious accommodation request.

90.     Irrespective of the interactive process, Defendant failed to provide Plaintiff with religious exemption and reasonable accommodation, thereby discriminating against Plaintiff because of his religious beliefs.

91.     Defendant's failure to provide religious exemption and accommodation has harmed and will continue to harm the Plaintiff.

92.     By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

93.     Plaintiff has filed and is filing charges with the EEOC complaining of these discriminatory actions, accompanied by attorney-requested immediate right to sue, which is expected imminently. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. See e.g., *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981); *Drew v. Liberty Mut. Ins. Co.*, 480 F.2d 69, 74 (5th Cir. 1973); *Bailey v. Delta Air Lines, Inc.,* 722 F.2d 942, 944-45 (1st Cir. 1983) and *Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir. 2016).

WHEREFORE, Plaintiff respectfully pray for relief against Defendant as set forth in their Prayer for Relief.

**COUNT II – VIOLATION OF EMERGENCY USE AUTHORIZATION PROVISIONS OF THE UNITED STATES CODE, 21 U.S.C. §360bbb-3, *et seq.***

94.    Plaintiff hereby realleges and adopt each and every allegation in paragraphs 1-84 as if fully set forth herein.

95.    The United States Code provides that:

> **subject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use." 21 U.S.C. §360bbb-3(a)(1) (emphasis added).

21 U.S.C. §360bbb-3(a)(1) (emphasis added).

96.    For ease of reference, Plaintiffs will refer to the general provisions of 21 U.S.C. §360bbb-3 as the "Emergency Use Authorization Statute" or "EUA Statute."

97.    Part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, **the statute mandates that all individuals to whom the product approved for Emergency Use may be administered be given the option to accept or refuse administration of the product.**

98.    Specifically, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III), states:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following
>
> . . .
>
> Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—
>
> (I)  that the Secretary has authorized the emergency us of the product;

(II) of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and

(III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. §360bbb-3(e)(1)(A)(ii)(I)-(III) (emphasis added).

99.     Put simply, the Emergency Use Authorization statute provides that, **as a condition of receiving authorization for Emergency Use, all individuals to whom the product may be administered are given the right to accept or refuse administration of the product.**

100.     The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech) are only authorized for use under the Emergency Use Authorization statute and have no general approval under the United States Code.

101.     Because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiffs, be given the right to accept or refuse administration of the product.

102.     The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[1] does not change the EUA status of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EUA since December 23, 2020.[2] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA "are legally distinct" products.[3]

---

[1] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.
[2] EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021, updated on Oct. 29, 2021), https://www.fda.gov/media/150386/download.
[3] Id. at 3 n.10 (emphasis added).

103.     Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."7 Thus, it is not clear when (or if) any Defendant employee will have access to the "approved" COMIRNATY vaccine, leaving all Defendant employees who may elect to receive the "Pfizer" vaccine pursuant to Defendant's mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules.

104.     The United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines. **See Exhibit E**, BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021), **See Exhibit F**, Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (updated Oct. 29, 2021).)

105.     In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine. (Ex. 12, Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.).

106.     The Pfizer Letter also makes clear that **there is a scientific, manufacturing, and legally significant difference between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine**. (Pfizer Letter at 2 n.9.).

107.     Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA

clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, **this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses.** It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)." (Emphasis added).

108.    Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendant (or any other entity) from making the COVID-19 vaccines mandatory.

109.    All existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.).

110.    On information and belief, the existing vials of the EUA-approved PfizerBioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, **not the fully approved COMIRNATY**.

111.    **In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older<u>, there is no sufficient approved vaccine for distribution to the population</u>.**" (Pfizer Letter at 6 n.12 (emphasis added).)

112.    Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer-BioNTech Covid-19 Vaccine. (Id.).

113.    Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, **it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine**. (See Pfizer Letter at 6 ("There is no adequate, approved, and **available alternative** to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added).)

114.    Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval and therefore cannot be mandated by Defendant.

115.    In addition, consistent with the requirement in the Emergency Use Authorization statute that all potential recipients of the COVID-19 vaccine be informed of the option to accept or refuse the vaccine, the Emergency Use Authorization Fact Sheet for all three of the currently available COVID-19 vaccines specifically states – **as required by the Emergency Use Authorization statute** – that individuals have the right to refuse administration of the COVID-19 vaccine. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Modern COVID-19 Vaccine is attached hereto as **See Exhibit G** and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Pfizer-BIONTECH COVID-19 Vaccine is attached hereto as **See Exhibit H** and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Janssen COVID-19 Vaccine is attached hereto **See Exhibit I** and incorporated herein.

116.    Specifically, the Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

117.    By imposing its Mandatory COVID-19 Vaccination Policy on Plaintiff and refusing to grant Plaintiff his requested religious exemption from such mandatory vaccination, Defendant is denying Plaintiff his right to accept or refuse administration of the three currently available

COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

118.    Defendant, by denying Plaintiff the right to accept or refuse administration of the three currently available COVID-19 vaccines, is violating the provisions of the Emergency Use Authorization statute.

119.    Defendant, by denying Plaintiff his requested religious exemption and reasonable accommodation, is denying Plaintiff's their statutory rights under the United States Code and infringing upon the explicit protections outlined in the Emergency Use Authorization statute.

120.    Defendant's Mandatory COVID-19 Vaccination Policy has caused, is causing, and will continue to cause Plaintiff immediate and irreparable harm by denying him his statutory right to accept or refuse administration of the three COVID-19 vaccines, which are subject only to Emergency Use under the Emergency Use Authorization statute.

121.    Plaintiff has no adequate remedy at law to prevent the ongoing deprivation of his statutory rights under the Emergency Use Authorization statute to be given the right to accept or refuse administration of the COVID-19 vaccines, which are subject only to Emergency Use authorization under the Emergency Use Authorization statute.

122.    Absent a TRO and injunctive relief, Defendant's deprivation of Plaintiff's right to accept or refuse administration of a product subject only to Emergency Use Authorization will cause him to suffer adverse employment action from Defendant.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in their Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

A. That the Court files this complaint and that the Defendant be required to answer within the time required by the Federal Rules of Civil Procedure.

B. That the Court issue an immediate/emergency Temporary Restraining Order restraining and enjoining Defendant, all its officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Mandatory COVID-19 Vaccination Policy or any other written or unwritten policy or practice denying Plaintiff, and all other similarly situated individuals, their right to accept or refuse administration of the COVID-19 vaccines under the Emergency Use Authorization statute, or subjecting Plaintiff, and all other similarly situated individuals, to discrimination for the exercise of their sincerely held religious beliefs against administration of the COVID-19 vaccines in violation of Title VII.

C. That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Defendant, all its officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Mandatory COVID-19 Vaccination Policy or any other written or unwritten policy or practice denying Plaintiff, and all other similarly situated individuals, their right to accept, or refuse administration of the COVID-19 vaccines under the Emergency Use Authorization statute, or subjecting Plaintiff, and all other similarly situated individuals, to discrimination for the exercise of their sincerely held religious beliefs against administration of the COVID-19 vaccines in violation of Title VII.

D. That this Court render a Declaratory Judgment declaring that Defendant's Mandatory COVID-19 Vaccination Policy, both on its face and as applied by Defendant, is illegal and

unlawful under the Emergency Use Authorization statute, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III), and Title VII, 42 U.S.C. § 2000e, et seq. and further declaring that:

      a. by terminating Plaintiffs from employment with Defendant or by threatening to so terminate or remove Plaintiffs from their current positions, Defendant has unlawfully denied Plaintiffs their statutory rights under the Emergency Use Authorization statute to refuse administration of a product granted only Emergency Use Authorization; and

      b. by terminating Plaintiffs from employment with Defendant or by threatening to so terminate or remove Plaintiffs from their current positions, Defendant has unlawfully discriminated against Plaintiffs on account of their sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of Title VII.

E. That this Court award Plaintiff actual damages in an amount to be proven at trial, including those for pain and suffering, that Plaintiff sustained as a result of Defendant's discriminatory, unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

F. That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

G. That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

H. That this Court award Plaintiff the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by Title VII.

I. That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

s/Darren V. Berg
Darren V. Berg
**Law Offices of Darren V. Berg**
Lead Counsel for Plaintiff
P.O. Box 453
Knoxville, TN 37901
865-773-8799
dberglawfirm@gmail.com

s/Russ Egli
Russ Egli
**The Egli Law Firm**
Co-Counsel for the Plaintiff
The Wisdom Building
11109 Lake Ridge Drive, FL3
Concord, TN 37934
865-304-4125
russegliatty@tds.net

*Counsel for Plaintiff*

## VERIFICATION

I, Aaron Miles Bare, am over the age of eighteen years and am an employee of Defendant. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Tennessee, that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: November 16, 2021

_____
Aaron Miles Bare

Sworn to and subscribed before me this 17 day of November , 2021.

_____  11/17/21
Notary Public

Page 32 of 32