UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| AARON MILES BARE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) 3:21-CV-00389-DCLC-DCP |
| | ) |
| vs. | ) |
| | ) |
| CARDINAL HEALTH, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

In response to the COVID-19 pandemic, Defendant instituted a policy requiring all salaried employees, unless exempted for religious or medical reasons, to be vaccinated to remain employed. Plaintiff received a religious accommodation. Nevertheless, he sued claiming the policy is discriminatory. Defendant argues Plaintiff lacks standing to bring his claim, as he cannot show an injury in fact. Article III of the United States Constitution gives jurisdiction to federal courts to hear "Cases" and "Controversies." U.S. Const. Art. III, § 2. To meet Article III's jurisdictional requirement, "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Because Plaintiff has not been injured, he lacks standing and his case is dismissed.

Plaintiff Aaron Miles Bare is a pharmacist employed by Defendant Cardinal Health, Inc.

("Cardinal Health"), a health care services company. Bare objects to Cardinal Health's vaccination policy and seeks damages and injunctive relief to prevent Cardinal Health from applying its COVID-19 policy to him and other similarly situated employees. Cardinal Health argues that Bare lacks standing and has not suffered an injury in fact because Bare applied for—and received—a religious accommodation exempting him from the otherwise mandatory vaccination policy. Bare has not received the vaccine, and Cardinal Health has not taken any adverse employment action against him as a result. Bare responds that he still has suffered an injury for Article III standing because Cardinal Health intends to review his religious accommodation in six months.

The Court finds that Bare does not have standing because he has not suffered a cognizable injury. The purported expiration of his religious accommodation is not a sufficient injury for standing because it is unclear whether Cardinal Health will revoke his accommodation at that time. Moreover, Bare has not suffered any adverse employment action since requesting his religious accommodation. For these reasons, the Court **GRANTS** Cardinal Health's Motion to Dismiss [Doc. 13] and **DENIES** Bare's Motion to Amend his First Amended Complaint [Doc. 23] as futile.

I. BACKGROUND

On August 21, 2021, Cardinal Health instituted a COVID-19 policy that required all salaried employees receive a COVID-19 vaccine by October 4, 2021 [Docs. 1-4, pgs. 1-2; 10, pg. 10]. In that policy announcement, Cardinal Health provided a process for employees to request a medical or religious accommodation that would exempt qualified employees from the otherwise mandatory vaccination policy [Doc. 1-4, pgs. 1-2]. Bare, a senior pharmacist for Cardinal Health, applied for a religious accommodation, which Cardinal Health initially denied [Doc. 10, pg. 14]. Following that denial, Bare filed the instant suit on November 17, 2021, and requested a temporary restraining order against Cardinal Health to prevent it from firing him after the vaccination

deadline of December 6, 2021 [Doc. 1]. After being served with Bare's original complaint, Cardinal Health approved his request for a religious accommodation [Doc. 9, pg. 1].

On December 3, 2021, Bare filed his First Amended Complaint, seeking class certification under Federal Rule of Civil Procedure 23(a) and asserting that Cardinal Health's COVID-19 policy was discriminatory because it provided a "sham" religious accommodation process [Doc. 10].[1] He requested the Court force Cardinal Health to provide permanent religious accommodations, not subject to further review, to its mandatory vaccination policy [*Id.*, pg. 2]. Bare explained that his current religious accommodation was set to expire in six months and that, upon expiration, he would suffer financial, physical, mental, and emotional harm if Cardinal Health were to terminate his employment for non-compliance with its COVID-19 policy [*Id.*]. He contended that Cardinal Health's process for applying for a religious accommodation was limited and demonstrated its insincerity in offering an accommodation [*Id.*, pgs. 13-14]. According to Bare, Cardinal Health's policy did not provide for appeals of initial denials of requests for religious accommodation, which showed that Cardinal Health failed to engage in the "good faith . . . interactive process contemplated by Title VII." [*Id.*, pg. 14]. Bare stated that he had a sincerely held religious belief in refusing to take any of the COVID-19 vaccines [*Id.*, pgs. 14-21].

Additionally, Bare explained that absent relief from the Court, he would be subject to an adverse employment action from Cardinal Health in the future [*Id.*, pg. 23]. He alleged Cardinal Health would not allow him to continue in his current position and that it would most likely terminate his employment [*Id.*]. Notably, Bare did not claim he had suffered an adverse employment action—only that he potentially faced such actions in the future [*Id.*]. Throughout his First Amended Complaint, Bare also asserted that Cardinal Health's COVID-19 policy caused

---

[1] In his First Amended Complaint, Bare requested a preliminary injunction but failed to file a separate motion for such relief [Doc. 10].

3

him mental and emotional harm but did not explain how that policy caused those harms, particularly when he already received a religious accommodation under the policy [*Id.*, pgs. 3, 5, 24, 27, 35-36].

Bare alleged two claims in his First Amended Complaint. First, he contended Cardinal Health's actions violated Title VII by discriminating against him because of his sincerely held religious beliefs [*Id.*, pgs. 26-27]. Bare asserted that Cardinal Health's initial failure to provide a religious accommodation and engage in an interactive process for such accommodations was discriminatory [*Id.*]. He explained that those failures continued to harm him and cause him mental and emotional anguish [*Id.*, pg. 27]. Second, Bare asserted that Cardinal Health's COVID-19 policy violated 21 U.S.C. § 360bbb-3, which gives individuals the option to accept or refuse the administration of a vaccine that the Food and Drug Administration ("FDA") has approved for "Emergency Use Authorization" ("EUA") [*Id.*, pgs. 27-34]. Importantly, Bare did not allege a separate tort claim for mental or emotional harm.

Cardinal Health now moves to dismiss Bare's First Amended Complaint [Doc. 13], and Bare responds [Doc. 30], opposing Cardinal Health's motion. Additionally, Bare moves to file a Second Amended Complaint [Doc. 23], and Cardinal Health responds [Doc. 26], opposing his motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). "[W]here subject matter jurisdiction is challenged

4

under Rule 12(b)(1) . . . the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of the subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," while "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Id.* This distinction is important because if the defendant makes a facial attack, the Court must take all of the allegations in the complaint as true to determine "whether the plaintiff has *alleged* a basis for subject matter jurisdiction." *Id.* (emphasis added). But if the defendant makes a factual attack, the Court may consider and weigh evidence, including evidence outside of the pleadings, to determine whether the plaintiff has carried the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

### III. DISCUSSION

#### A. Cardinal Health's motion to dismiss

Cardinal Health asks this Court to dismiss Bare's First Amended Complaint, essentially claiming the Court lacks subject matter jurisdiction under Fed. R. Civ. P 12(b)(1). It mounts a facial attack on Bare's First Amended Complaint because it assumes the truth of Bare's factual allegations. Thus, the Court's analysis will focus on determining the sufficiency of Bare's pleadings to establish subject matter jurisdiction. *Cartwright*, 751 F.3d at 759-60.

In its motion to dismiss, Cardinal Health argues that Bare has failed to establish standing and has no viable cause of action against it [Doc. 14, pgs. 1-2]. It gave Bare a religious

5

accommodation to the mandatory vaccination policy, thereby nullifying any purported injury he might have suffered [*Id.*, pg. 2].

Bare responds that his case is not moot and that Cardinal Health's grant of a religious accommodation does not remove the need for injunctive relief because that accommodation could be revoked in six months [Doc. 31, pg. 4]. Bare contends that the decision as to whether the accommodation is renewed in six months is within Cardinal Health's "sole discretion." [*Id.*, pg. 5]. Bare next argues that his case is not moot because he asserts a claim for mental and emotional anguish due to Cardinal Health "telling him he would be fired absent taking the Covid-19 Vaccination." [*Id.*, pgs. 6, 10-11].

In reply, Cardinal Health notes that Bare's claims are not ripe and that Bare has not asserted that he has suffered any adverse employment action under Title VII [Doc. 36, pgs. 2-3]. Cardinal Health explains that it seeks to recertify Bare's religious accommodation in six months to determine whether the accommodation has "impacted his ability to perform the essential functions of his job or imposed an undue hardship on [Cardinal Health]." [*Id.*, pg. 3]. It characterizes Bare's asserted harm related to the six-month review of his accommodation as speculative [*Id.*, pg. 4]. Further, Cardinal Health argues that Bare has not alleged a tort claim for mental and emotional anguish [*Id.*, pg. 8].

"Article III limits the judicial power to resolving actual 'Cases' and 'Controversies,' not theoretical questions." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020) (quoting U.S. Const. Art. III, § 2). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, "a plaintiff must show that the plaintiff has suffered an injury, that the defendant's conduct likely caused the injury, and that the relief sought will likely redress the injury." *Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021).

6

The plaintiff must suffer an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. A concrete injury is "real and not abstract." *Buchholz*, 946 F.3d at 861. The Sixth Circuit recognizes that mental and emotional anguish are injuries sufficient to support Article III standing. *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021). But the Supreme Court has reasoned that a "psychological consequence presumably produced by observation of conduct with which one disagrees" is "not an injury sufficient to confer standing under Art. III[.]" *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 485 (1982).

Moreover, a threatened injury is not an injury for standing unless it is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401-02 (2013). In *Clapper*, the Court addressed a constitutional challenge to the Foreign Intelligence Surveillance Act of 1978, which authorized government surveillance of certain foreigners located outside the United States. *Id.* at 401. The challengers, a group of attorneys and human rights advocates, alleged several injuries in fact, including their fear that the government would monitor their communications with foreign contacts. *Id.* at 410. But because it was far from certain that the government would intercept any of the challengers' communications, the Court described the alleged injury as a "highly speculative fear" that was not cognizable. *Id.* When a plaintiff claims to have standing based on the threat of a future injury, it is not enough that the future injury could occur—the "threatened injury must be certainly impending." *Id.* Indeed, the Sixth Circuit recently held that "a yet-to-happen injury must be certainly impending to constitute injury in fact; the mere possibility that the injury will arise in the future does not suffice." *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 545 (internal quotations omitted).

Here, Bare contends that the religious accommodation he received from Cardinal Health can be revoked in six months, which constitutes an injury-in-fact for standing. [Docs. 10, pg. 2;

7

31, pg. 4]. That Cardinal Health might terminate Bare is far from certain. Thus, his threatened injury is not "certainly impending." *Clapper*, 568 U.S. 398, 401-02. Cardinal Health does not claim it intends to revoke Bare's religious accommodation in six months. Rather, it claims it will review whether the accommodation has impacted Bare's ability to perform the essential functions of his job or whether the accommodation has imposed an undue hardship on it. [Doc. 36, pg. 3]. Bare's claim of injury is premature because Cardinal Health has not decided to revoke his religious accommodation. [*Id.*, pg. 4]. Additionally, Bare's assertion that Cardinal Health has violated the EUA statute does not provide him with an injury-in-fact. Even assuming the EUA statute provides Bare a private right of action,[2] Bare's allegations still do not show that he was injured because Cardinal Health provided him a religious accommodation that exempts him having to take a COVID-19 vaccine.

Further, Bare has not claimed Cardinal Health has taken any adverse employment action against him that would otherwise give him standing in this case. He does not allege he has been fired, demoted, or disciplined for requesting a religious accommodation. Although he states he has suffered mental and emotional anguish because of Cardinal Health's Covid-19 policy, he did not allege a tort claim for such injuries in his First Amended Complaint. The lack of a tort claim for mental and emotional anguish in Bare's First Amended Complaint undercuts the assertion in his response that he suffered such injuries.

Additionally, it is unclear how Bare suffers from mental and emotional anguish because he received a religious accommodation. [Doc. 10, pg. 2]. Throughout his First Amended Complaint,

---

[2] Title 21, Section 360bbb-3, the EUA statute cited by Bare, does not provide him a private right of action. Section 337(a) provides that "all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." *See Norris v. Stanley*, No. 1:21-CV-756, 2022 WL 247507, at *5 (W.D. Mich. Jan. 21, 2022) (finding the EUA statute, 21 U.S.C. § 360bbb-3, does not provide a private right of action).

Bare claims Cardinal Health's COVID-19 policy itself caused his mental and emotion anguish [Doc. 10, pgs. 3, 5, 24, 27, 35-36]. But Bare has not been vaccinated, and Cardinal Health approved his religious accommodation. And Cardinal Health has not indicated that it intends to revoke his accommodation at the end of the initial six-month period. Given that, his allegation that Cardinal Health's policy itself caused him to suffer mental and emotional anguish does not create an injury-in-fact for Article III standing.

Bare next argues that the harm raised in his First Amended Complaint is capable of repetition but could evade review by a court because of Cardinal Health's allegedly discretionary accommodation policy [Doc. 31, pgs. 6-10]. Bare relies on the Supreme Court's recent decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020) (granting emergency injunctive relief that prevented New York from enforcing occupancy limits against religious institutions as part of the State's COVID-19 restrictions) [*Id.*, pgs. 8-9]. He also notes that Cardinal Health's voluntary cessation of allegedly unlawful conduct does not moot his case [*Id.*, pgs. 9-10].[3]

Bare's reliance on *Cuomo* is misplaced. In *Cuomo*, a church and synagogue sought emergency injunctive relief from the Supreme Court to prevent then-New York Governor Andrew Cuomo from enforcing an executive order that imposed 10- and 25-person occupancy limits on houses of worship located in zones that had higher numbers of COVID-19 cases. *Cuomo*, 141 S. Ct. at 65–66. The church and synagogue asserted the Governor's occupancy restrictions violated the Free Exercise Clause of the First Amendment. *Id.* at 66. The Supreme Court reasoned that the church and synagogue were entitled to injunctive relief pending appellate review because they

---

[3] Bare also argues that, should the Court dismiss his case, he should be considered the prevailing party and be awarded attorney's fees [Doc. 31, pgs. 6, 11-14]. Cardinal Health responds that, if the Court dismisses Bare's amended complaint, he cannot be considered a prevailing party [Doc. 36, pg. 9]. The Court fails to see how dismissal of his case would render Bare the prevailing party, and it declines to consider him as such.

9

established that their First Amendment claims were likely to prevail, they would be irreparably harmed without relief, and granting them relief would not harm the public interest. *Id.* Moreover, the Court concluded that, although Governor Cuomo's later reclassification allowed 50% occupancy for the church and synagogue, the case was not moot because Governor Cuomo could "change[] the classification of particular areas without prior notice." *Id.* at 68. The Court further explained that Governor Cuomo previously had reclassified areas late in the week, which would have prevented religious services from taking place. *Id.*

*Cuomo* is distinguishable from this matter. Unlike in *Cuomo*, Cardinal Health's vaccine mandate is neutral because it applies to all its employees. Whereas in *Cuomo* the Court faced a restriction of religious worship, Cardinal Health's policy does not target any class of its employees, much less those who sincerely hold religious beliefs. Indeed, those who hold such beliefs receive an accommodation, just like Bare did. The injuries each party faced also distinguishes *Cuomo* from Cardinal Health's policy. In *Cuomo,* the state government was infringing on the First Amendment right to worship by preventing the church and synagogue from holding full services. Nothing of that magnitude is happening with Cardinal Health's policy. In fact, Bare has received a religious accommodation, so Cardinal Health's COVID-19 policy does not apply to him at all, unlike the church and synagogue in *Cuomo* that were subject to the Governor's executive order. Lastly, the Supreme Court relied on Governor Cuomo's previous actions to determine that the case was not moot. Here, Cardinal Health has not previously revoked Bare's accommodation or indicated that it would do so at the end of the six-month period.

Nonetheless, Bare argues he has standing because Cardinal Health could wrongfully deny a religious accommodation in the future even though he has received a religious accommodation presently. "If the plaintiff *ceases* to have standing such that a live case or controversy no longer exists, the case becomes moot." *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016) (emphasis

10

added). "An exception to the mootness doctrine exists for cases that are capable of repetition, yet evading review." *Id.* "This exception applies if the challenged action is too brief to be litigated fully before it concludes and if 'there is a reasonable expectation that the same party will be subject to the same action again.'" *Id.* (quoting *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). The party asserting the exception bears the burden of proof. *Id.* The mere physical or theoretical possibility that an action is repeatable is insufficient to substantiate the exception because that would render "virtually any matter of short duration . . . reviewable." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

Bare's suit is not moot because of a subsequent event that has alleviated the injury alleged in his First Amended Complaint. Bare has not "*cease[d]* to have standing." *Barry*, 834 F.3d at 715 (emphasis added). Bare cannot cease to have standing if he did not have standing in the first place. Thus, because he has not been injured, the mootness doctrine does not apply. And for the same reasons, the capable of repetition, yet evading review exception is equally inapplicable. The problem is Bare's asserted injury does not rise above a mere theoretical possibility, which is insufficient to apply the exception. *Murphy*, 455 U.S. at 482. As noted above, Cardinal Health has not previously revoked Bare's accommodation or indicated that it intended to revoke his accommodation at the end of the six-month period. It only seeks to review whether the accommodation has impacted Bare's ability to do his job and whether the accommodation has burdened it. [Doc. 36, pg. 3].

Accordingly, Cardinal Health's Motion to Dismiss [Doc. 13] is **GRANTED**.[4]

---

[4] Because Bare lacks standing to bring the instant suit, the Court declines to address Cardinal Health's merits arguments [Doc. 14, pgs. 3-5]. Additionally, to the extent that Bare requests a preliminary injunction in his First Amended Complaint, his request is denied because standing is a prerequisite to injunctive relief. *See Online Merchants Guild v. Cameron*, 995 F.3d 540, 547 (6th Cir. 2021).

Additionally, Bare's request for class certification is denied because he lacks standing to assert any claims on behalf of a purported class of Cardinal Health employees.[5]

### B. Bare's motion to amend his First Amended Complaint

Bare moves for leave to file a Second Amended Complaint [Doc. 23]. He seeks to add another named plaintiff to his complaint, Christopher A. Davis, who allegedly did not receive a religious exemption from Cardinal Health's COVID-19 policy [*Id.*, pg. 1]. Bare's Proposed Second Amended Complaint is the same as his First Amended Complaint, with the addition of Davis as another named plaintiff and Cardinal Health employee that suffered the same alleged harms from Cardinal Health's COVID-19 policy [Doc. 23-2].

Cardinal Health opposes Bare's motion and argues that allowing him to file that complaint would be futile because it would not cure any of the defects from the First Amended Complaint [Doc. 26, pgs. 1-8]. It asserts that Bare's Proposed Second Amended Complaint could not withstand a motion to dismiss because it is the same as the First Amended Complaint, and Davis also has not suffered an injury-in-fact to establish standing [*Id.*, pg. 2-4]. As to Davis, Cardinal Health states that Davis does not contend that he requested an accommodation that was denied and that he has not asserted any basis for a religious accommodation under Title VII [*Id.*, pg. 4]. Cardinal Health also contends that Davis has not exhausted his administrative remedies through the Equal Employment Opportunity Commission ("EEOC") [*Id.*, pg. 5].

In support of its response, Cardinal Health includes a declaration from Lucy Shull, a manager for Cardinal Health and Davis's supervisor [Doc. 26-2, pgs. 1-2]. Shull states that Cardinal Health's COVID-19 policy informed employees of their ability to request a religious

---

[5] The Court notes that, even if it were to review the merits of Bare's class allegations, the proposed class definition is unclear because Bare states that he wishes to "represent a class of all NorthShore employees." [Doc. 10, pg. 2]. Bare does not explain who the "NorthShore employees" are or how they relate to Cardinal Health.

12

accommodation [*Id.*, pg. 1]. Shull explains that Davis initially informed her that he would not request a religious accommodation because "his decision [not to get vaccinated] was for personal reasons." [*Id.*]. She also states that she emailed Davis, on December 23, 2021, that he would not be fired on January 4, 2022 [*Id.*]. According to Shull, she drafted that email on December 20, 2021, but did not send it until December 23 because she was on leave [*Id.*].

Bare replies that Cardinal Health's accommodation does not make his Proposed Second Amended Complaint futile because his accommodation can be revoked in six months [Doc. 33, pgs. 5-10]. Bare asserts that Davis applied for an accommodation but that assertion is not in the Proposed Second Amended Complaint itself [*Id.*, pg. 5]. Indeed, Bare attaches Davis's request for a religious accommodation, which shows that Davis only applied for his accommodation on January 6, 2022—the same day Bare's reply was filed [Doc. 33-2, pg. 1]. He contends that Davis initially was not aware of his ability to seek a religious exemption[6] and that Cardinal Health only told Davis that he would not be fired after it was served with Bare's Proposed Second Amended Complaint [Doc. 33, pg. 6]. Bare asserts that his Proposed Second Amended Complaint contains claims for mental and emotional anguish because of Cardinal Health informing him that he would be fired for failing to comply with its COVID-19 policy [*Id.*].

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246

---

[6] This claim is contradicted by Bare's original complaint, which attached a copy of Cardinal Health's COVID-19 policy that clearly states a religious accommodation will be available, and by Bare's First Amended Complaint, which quotes the section of Cardinal Health's COVID-19 policy that states a religious accommodation will be available. [Docs. 1-4, pgs. 1-2; 10, pg. 11].

13

F.3d 593, 605 (6th Cir. 2001). A proposed amendment is futile if the amendment could not withstand a motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The Proposed Second Amended Complaint is futile because it could not withstand a motion to dismiss by Cardinal Health. As an initial matter, Davis has not exhausted his administrative remedies with the EEOC. [Doc. 26, pg. 5]. Davis has not submitted evidence of the EEOC issuing a notice of right to sue to him. Before filing a Title VII claim, a plaintiff must receive a right-to-sue letter from the EEOC and then file suit within ninety days after receiving the right-to-sue letter. 42 U.S.C. § 2000e-5(e) and (f); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974); *see also Mayers v. Sedgwick Claims Mgmt Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004). Thus, Davis's Title VII claim is subject to dismissal on that ground alone.

Even if Davis had exhausted his administrative remedies, the Proposed Second Amended Complaint suffers from the same infirmities as the First Amended Complaint because both complaints are the same, except that the Proposed Second Amended Complaint adds Davis as a named plaintiff. The allegations in the Proposed Second Amended Complaint do not show that Bare has suffered an injury-in-fact to grant him standing to bring the present suit, as discussed above. Similarly, the Proposed Second Amended Complaint does not show that Davis has standing to bring this suit because there is no allegation that he has suffered any adverse employment actions under Title VII or that he has been forced to take any COVID-19 vaccine. The Proposed Second Amended Complaint also does not allege that Davis applied for a religious accommodation or was denied one. [Doc. 23-2, pgs. 4-5]. Although Bare asserts that Davis has since applied for an accommodation, that assertion is contained in Bare's reply to Cardinal Health's response to his motion to amend and not in the Proposed Second Amended Complaint itself. [Doc. 33, pg. 5]. Moreover, any claims for mental and emotional anguish that Davis might

14

have fail because there is no cause of action alleged in relation to those purported injuries. And the Proposed Second Amended Complaint fails to show how Cardinal Health's COVID-19 policy caused any mental and emotional anguish for Davis when he did not have to comply with that policy. Accordingly, Bare's Motion to Amend [Doc. 23] is **DENIED** as futile.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss [Doc. 13] is **GRANTED**, and Plaintiff's Motion to Amend [Doc. 23] is **DENIED**. Bare's First Amended Complaint is **DISMISSED WITH PREJUDICE**. A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker<br>United States District Judge