# IN THE UNITED STATES DISTRICT COURT
## EASTERN SECTION OF TENNESSEE
### AT KNOXVILLE

AARON MILES BARE,
on behalf of himself and all others
similarly situated employees of
Cardinal Health, Inc.

       Plaintiffs,

v.

CARDINAL HEALTH, INC.,

       Defendant.

Civil Action No.: 3:21-cv-389

---

## MEMORANDUM OF LAW AND STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF'S RULE 59 MOTION TO ALTER OR AMEND JUDGMENT

---

Comes the Plaintiff, by and through counsel, and in support of its Rule 59 Motion to Alter or Amend the Judgment [Doc # 40] and would show unto this Honorable Court the following.

### STATEMENT OF FACTS

Plaintiff filed the original Complaint [Doc. # 1] in this matter as a result of Defendant's failure to provide Plaintiff a religious accommodation from being forced to take the Covid-19 Vaccination as mandated by Defendant. [See Doc. # 1]. Defendant was served with the initial Complaint on November 23, 2021, at 10:40 AM. [Doc. # 8, 8-1]. Interestingly, after the Defendant had been served with Plaintiff's complaint, which in part sought an emergency temporary restraining order on behalf of all other similarly situated Cardinal Health employees, the Plaintiff was notified by Defendant that his religious accommodation, which had previously been

Case 3:21-cv-00389-DCLC-DCP   Document 44   Filed 04/27/22   Page 1 of 24
PageID #: 373

summarily denied with no ability for review, had now been granted. [Doc. # 8, 8-1] [Doc. # 9][1], see also [Doc. # 10, Att. 1, Exh. J.]. Afterward, as Defendant had not yet answered or moved to dismiss the original Complaint, Plaintiff filed his First Amended Verified Class Action Complaint. [Doc. # 10]. In Plaintiff's First Amended Verified Class Action Complaint, the Plaintiff amended to, among other things, seek Rule 23 Class Action Status,[2] sought to serve as lead class plaintiff, damages, and preliminary injunctive relief as to the religious accommodation the Defendant decided to provide the Plaintiff after being sued, which stated in pertinent part:

> Plaintiff, and all other similarly situated employees, that had their religious exemption requests initially denied by the Defendant, and after this complaint was filed and served on the Defendant, Defendant did an about-face about the Plaintiff and decided to grant Plaintiff's exemption request ***but only on the contingency that it has a life span of six months. The document provided to Plaintiff by his employer also contains the following language, "The accommodations provided herein may be modified or eliminated in the event that changes in your condition impact your ability to perform the essential functions of your position, or if the accommodations at any time impose an undue hardship on the Company."*** Regarding all other similarly situated employees who may not have been granted an exemption to the COVID-19 Mandatory Vaccination Policy, said employees will lose their jobs if they fail to take the vaccination.

[Doc. # 10, ¶ 7, also see, Exh. J.]. ***Emphasis added.***

In context, Defendant's sham religious accommodation is not an accommodation at all in all reality. It was only after Defendant had received the Plaintiff's Amended Complaint that it then moved to dismiss [Doc # 13] the Amended Complaint as moot because it had approved the previously denied religious exemption of the Plaintiff after having been served with the original Complaint, as well as the Amended Complaint seeking Rule 23 Class status.[3] It is important to

---

[1] It appears that this Honorable Court is of the opinion that Plaintiff lacked standing to sue when he brought this lawsuit because he had already received a religious accommodation. To the contrary, and as set forth herein, Plaintiff was denied his religious accommodation which was thereafter granted by the Defendant after it had been sued in this lawsuit.

[2] This Honorable Court mentions in its Memorandum Opinion that it is not aware who or what Northshore Employees is. [Doc # 10, pg. 2]. This was simply a scrivener's error and Plaintiff clearly meant to reference Cardinal Health Employees.

[3] In prematurely filing its Motion to Dismiss [Doc # 13], Defendant failed to comply with this Honorable Court's Meet and Confer Order [Doc # 6] thereby abrogating the Plaintiff's right to amend freely pursuant to said Court Order, which may have alleviated these motions and briefs.

note, that the Plaintiff's Amended Complaint set forth averments that the Defendant had caused the Plaintiff mental and emotional anguish as a direct result of its unlawful conduct in denying his religious accommodation from the time it told Plaintiff he would be fired if he did not get vaccinated up until the time Defendant changed its decision after being served with Plaintiff's lawsuit. [Doc. # 10, ¶ 15, 84, 96, also see Prayer for Relief ¶ H.]. This claim for mental and emotional anguish has also been added in the Proposed Second Amended Complaint. [Doc. # 23].

Thereafter, the Plaintiff filed a Rule 15(a) Motion to Amend, wherein Plaintiff sought to add Mr. Christopher A. Davis as an additional class plaintiff, in this case, it is worth noting here that Mr. Davis was not provided the choice of a religious exemption to the Defendant's Covid-19 Mandate (until after he sought to be added as a class plaintiff against the Defendant and the Defendant had actual knowledge of the Plaintiff's Motion to Amend) and was told by the Defendant he would be terminated by January 4, 2022, if he did not take the vaccine. [Doc. # 23-2, ¶ 3]. It was only after the Plaintiff's Motion to Amend [Doc # 23] was filed with the proposed Second Amended Complaint and was served upon Defendant's counsel through this Honorable Court's ECF system did the Defendant then email Mr. Davis and tell him he would not be fired on January 4, 2022. [Doc # 29, Attachment # 1]. The reason the Plaintiff raises this conduct of the Defendant is that it shows a continuing motive and pattern of conduct by the Defendant to pick the winners and losers as to other similarly situated employees that submit religious accommodation requests from having to take the Covid-19 Vaccine while not affording proper due process to said employees. *Id.*, also see [Doc. # 10, Attachment # 1].

Mr. Davis has now been provided a religious accommodation to Defendant's Covid-19 Vaccine Mandate, but again this religious accommodation was granted by Defendant only after having actual knowledge of Mr. Davis seeking to be added as a class plaintiff to this lawsuit. [Doc

# 23, Attachments # 1-2]. Simultaneously, Mr. Davis also filed his complaint with the EEOC in Ohio to seek his right-to-sue letter. *Id.*

Regarding Mr. Davis, and as the original Complaint and First Amended Verified Class Action Complaint and proposed Second Amended Complaint make clear, this Honorable Court has the power to maintain the status quo under these set of facts while the EEOC is providing the right-to-sue letter. [Doc. # 1, Doc. # 10 and Doc. # 23]. Although Mr. Davis has been granted the same religious accommodation agreement, which is no accommodation at all, as has been argued in this case, the religious exemption only lasts for 6 months and in the interim can be taken away at the sole discretion of the Defendant. [Doc # 10, ¶ 4]. Such a religious exemption, which is completely one-sided in Defendant's favor, is a glaring example of capable of repetition yet evading review. *Id.* Finally, Mr. Davis also sought damages in the proposed First Motion to Amend Revise [Doc # 23] resulting from the Defendant's discrimination of Mr. Davis due to his religious beliefs and damages arising out of Plaintiff's Title VII, 42 U.S.C. § 2000e, et seq. claim [Doc # 23, ¶, 85, 92-93. Prayer for Relief ¶ H]. Moreover, it is clear from Plaintiff's First Amended Verified Class Action Complaint [Doc # 10, ¶ 8, 85, 96, Prayer for Relief ¶ F, H] that the mental and emotional anguish claims are a direct result of the Defendant's discrimination of the Plaintiff due to his religious beliefs and damages arising out of Plaintiff's Title VII, 42 U.S.C. § 2000e, et seq. claim, *Id.* Both the First Amended Verified Class Action Complaint [Doc # 10 and 11], as well as The Proposed Amended Complaint [Doc # 23, Attachment # 2] was verified by Plaintiff and Mr. Davis respectively.

This Honorable Court issued a final judgment and memorandum opinion [Doc # 38] wherein it was ordered that:

a.     The Plaintiff's Motion for Leave to Amend with proposed First Amended Verified Class Action Complaint was denied. *Id.*

b.     Plaintiff's lawsuit was essentially dismissed with prejudice based on standing and mootness. [Doc # 38]. In dismissing the case with prejudice and entering its subsequent judgment on the same [Doc # 39] Plaintiff argues that the following errors were made:

i.     The Court failed to apply Fed. R. Civ. P 12 in the light most favorable to the averments of the First Amended Verified Class Action Complaint. [Doc  # 10]. There are facts outlined in the memorandum opinion that conflict with or otherwise are not in the First Amended Verified Class Action Complaint. [Doc # 38 and 10, ¶ 7], also see [Doc # 40, ¶ 8-9]. Specifically, in its Memorandum and Final Judgment, this Honorable Court confuses the matters surrounding what seem to be differing facts, or misunderstanding of the facts, over the Plaintiff suing the Defendant after he had received a religious accommodation and therefore Plaintiff has no standing to bring this lawsuit. [Doc # 38, Pages 2-3]. Plaintiff's complaint and First Amended Verified Class Action Complaint taken most favorably in his favor with averments considered to be true sets forth not only that the lawsuit was brought for a denial of Plaintiff's religious exemption but also brought both a mental and emotional damages claim a result of Defendant's initial denial of his religious accommodation, therefore, he has suffered damages by the Defendant's unlawful conduct. [Doc # 1, ¶ 6-7, 39-41, 43, 45, 74, 84, 91, Prayer for Relief ¶ E), also see [Doc # 10 ¶ 6, 8, 10, 33, 74, 94, 96].  Plaintiff sought these damages not only for himself but also for other employees of Defendant that are similarly situated in this claim and controversy as a Rule 23 Class Action. [Doc # 10, ¶ 1, 5, 16, 85-89].

ii.     This Honorable Court erred in finding the claims in this matter are not capable of repetition and evading review. [Doc # 38].

v.       This Honorable Court erred in denying Plaintiff's Motion to Amend. *Id.*

vi.       This Honorable Court erred in not finding that Defendant's voluntary cessation of its unlawful conduct was not an exception to the mootness doctrine and that Plaintiff had the standing to bring this lawsuit when he initiated it. *Id.*

vii.       This Honorable Court failed to address the claim for violation of Title VII for failure to have proper procedures in place to provide a proper review which comports with due process of its decision to deny religious accommodation raised by the Plaintiff in the First Amended Verified Class Action Complaint. [Doc # 1], also see [Doc # 10], [Doc # 38].

## LAW AND ARGUMENT

### I. Standard of Review for Fed. R. Civ. P 12(b)(1) Motion.

A Rule 12(b)(1)for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court must weigh the evidence to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). However, if a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *Gentek*, 491 F.3d at 330.

### II. Article III and Exceptions.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108

L.Ed.2d 400 (1990) (citing *Deakins v. Monaghan,* 484 U.S. 193, 199, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). If the dispute discontinues or the court is no longer able to grant meaningful relief to the prevailing party, the action is moot, and the court must dismiss for lack of jurisdiction. *United States v. Blewett,* 746 F.3d 647, 661 (6th Cir.2013); *Knox v. Serv. Emp. Int'l Union,* —— U.S. ——, 132 S.Ct. 2277, 2287, 183 L.Ed.2d 281 (2012)); *accord Chafin v. Chafin,* —— U.S. ——, 133 S.Ct. 1017, 1023, 185 L.Ed.2d 1 (2013).

Article III, however, is not without its exceptions.

"[A] case will not be considered moot if the challenged activity is capable of repetition, yet evading review." *Id.* at 371; *also see*; *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.' " *Wisconsin Right to Life,* 551 U.S. at 462, 127 S.Ct. 2652 (quoting *Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)), *Kentucky v. U.S. ex rel. Hagel,* 759 F.3d 588 (6th Cir. 2014).

The Supreme Court has carved out a mootness exception for issues " capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). In *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), it limited the "capable of repetition, yet evading review" doctrine to situations where: "(1) the challenged action was in its duration too short to be fully litigated before its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 148, 96 S.Ct. 347.

In the case at bar, it is clear that this lawsuit brought by the Plaintiff was necessary to not only challenge the Defendant's unlawful conduct and prevent it from occurring further for both himself and others similarly situated but also to seek relief from this Honorable Court a finding that the religious accommodation denials are unlawful, that the Defendant's review procedures for a denial fail to comport with due process and are violative of Title VII and for damages in the form of attorney's fees and mental and emotional anguish. [Doc # 10, ¶ 85-89]. In addition, the unlawful conduct of Defendant ceased after it had been served with the initial complaint in this case. [Doc # 10, ¶ 7]. Defendants unlawful conduct ceased so far as Dr. Bare is concerned quickly before it could be litigated thereby meeting the first prong of Article III. [Doc # 10, ¶ 7]. By the Defendant's contract, it can return to the Covid-19 Vaccine Mandate today, tomorrow a week from now and it is an absolute certainty that the Defendant can strip the Plaintiff, Mr. Davis, and others similarly situated[4] of their religious accommodation in 6 months and again demand he takes to the vaccine or be fired. *Id*. Both the Plaintiff and proposed class plaintiff, Chris Davis, as well as all other similarly situated employees of the Defendant, have reasonable expectations that at any minute and for certain in 6-months they will have their religious accommodation retracted and forced again to either take the vaccine or be fired. [Doc # 10 and 23, Attachments # 1-2). Therefore, the parties will either be back in litigation whenever Defendant decides to rescind the religious accommodation but most certainly in 6 months when the accommodation expires. *Id.* To the point, the Defendant has temporarily suspended its unlawful conduct as to the Plaintiff and Mr. Davis to allow it to hold on to the ability to discriminate against its employees' deeply held religious held beliefs and repeat the conduct complained of herein – again by its admission in its religious accommodation agreement. *Id.*

---

[4] Undersigned counsel is aware of at least one Cardinal Health employee who lost her job as a result of the Defendant's Mandatory Covid-19 Vaccine Policy.

In addition, Plaintiff has sought in this case class-action status under Fed. R. Civ. P. 23 for other similarly situated employees of the Defendant, who, either had their religious exemptions denied and were forced to take the vaccine in violation of their religious beliefs to keep their jobs or were fired for failing to take the vaccine despite a religious accommodation request. [Doc # 10, ¶ 85-89]. It is clear in the First Amended Verified Class Action Complaint that Plaintiff requests this Honorable Court to certify class status and sought to litigate the legality of Defendant's Covid-19 Vaccine Mandate in a representative capacity for the class. *Id.* The Sixth Circuit thinks that this factor alone significantly affects the mootness determination.

In *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), where a challenged ICC order had expired, and in *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), where petitioners sought to be certified as candidates in an election that had already been held, the Court expressed its concern that the defendants in those cases could be expected again to act contrary to the rights asserted by the particular named plaintiffs involved, and in each case, the controversy was held not to be moot because the questions presented were 'capable of repetition, yet evading review.' To dismiss a class action complaint as moot simply because the defendant has sought to "buy off" the individual private claims of the named plaintiffs would be contrary to sound judicial administration. *Deposit Guaranty Nat. Bank, Jackson, Miss,* 445 U.S. 326, 339-340 (1980). Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover, it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement. *Id.* This is especially true where, as herein, the claim is capable of repetition yet evading review, however that is not the only exception that applies herein.

Unlike parties proceeding individually, "[a] class representative has two legally cognizable interests: 'One is the claim on the merits; the other is the claim that he is entitled to represent a class.'" *Richards v. Delta Airlines, Inc.,* 453 F.3d 529, 528 (U.S.App.D.C. 2016) (quoting *Geraghty,* 445 U.S. at 402, 100 S.Ct. 1202). There are three exceptions to mootness when reviewing a case in which class status has been sought. *Wilson v. Gordon,* 822 F.3d 934, 942 (6th Cir. 2016). The district court held that three exceptions to the mootness doctrine applied—the "capable of repetition, yet evading review" exception, the "inherently transitory" exception, and the "picking off" exception. *Id.*

The capability of repetition yet evading review has been argued above as, on one hand, the Plaintiff can suffer the same treatment any day but most certainly in 6 months-time when his accommodation expires by operation of law and the fact that there are other yet unknown class plaintiffs that have either been fired or are going to be fired for refusing to comply with the Defendant's Covid-19 Mandatory Vaccination Policy of which the employees do not want to take based on their deeply held religious beliefs.

In *Sosna,* the Supreme Court first hinted at what would become the "inherently transitory" exception to normal mootness rules when the named plaintiff's claims become moot before class certification:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to 'relate' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise, the issue would evade review. 419 U.S. at 402 n. 11; *see also Geraghty,* 445 U.S. at 399, 100 S.Ct. 1202 (describing this as the "inherently transitory" exception).

*Sosna v. Iowa,* 419 U.S. 393 (1975).

Courts have set forth two requirements for the "inherently transitory" exception to apply: (1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury. *See, Olson v. Brown,* 594 F.3d 577, 582 (7th Cir.2010), also see [Doc # 10].

The "picking off" exception was developed to prevent defendants from strategically avoiding litigation by settling or buying off individual named plaintiffs in a way that "would be contrary to sound judicial administration." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). A court need not wait until after class certification has been denied to apply this exception. This District and others recognize this exception even when a motion for class certification is still pending, because "the defendant is on notice that the named plaintiff wishes to proceed as a class and the concern that the defendant, therefore, might strategically seek to avoid that possibility exists." *Wilson*, 822 F.3d at 947; *see also Brunet*, 1 F.3d at 400 ("If a tender made to the individual plaintiff while the motion for certification is pending could prevent the courts from ever reaching the class action issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate") (quoting *Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1978)).

In the case at bar, Plaintiff initially sought relief from this court on behalf of himself and all other similarly situated employees of Defendant. [Doc # 1]. Plaintiff's initial lawsuit requested the following relief: declaratory judgment relief, injunctive relief both temporary and permanent, monetary damages both for mental and emotional anguish, and attorney's fees under Title VII and costs. *Id.* at Prayer for Relief, Page ID # 28-29. Defendant, after having been sued for its unlawful conduct by the Plaintiff ceased its unlawful conduct voluntarily but not before Plaintiff suffered damages as a result of same by way of Title VII and mental and emotional anguish associated with

Defendant's unlawful conduct, as well as Plaintiff's attorney's fees for having to bring this action to save his job. [Doc # 10, ¶ 6-8]. Defendant essentially executed a "picking off" tactic with Plaintiff by voluntarily ceasing its unlawful conduct after having been sued to avoid class-action status. *Id.* At this point, Plaintiff had requested to be appointed as the lead class plaintiff on behalf of all other employees of Defendant similarly situated to the harms outlined in this lawsuit. *Id.* at ¶ 1, 16, Prayer for Relief ¶ E]. It is important to note that Plaintiff requested this Court to certify the class of all other similarly situated employees of Defendant in the First Amended Verified Complaint. [Doc # 10, ¶ 1, 16, Prayer for Relief ¶ E].  In short, Plaintiff's claims are not moot as they are capable of repetition yet evading review as Defendant's religious accommodation sets forth on its face. The Defendant should not be rewarded for executing a "picking off" tactic by voluntary ceasing its conduct to the Plaintiff after the Plaintiff had suffered mental and emotional anguish and thousands of dollars in attorney's fees and finally because the Plaintiff sought class status and to be appointed as the lead class plaintiff on behalf of all other similarly situated employees of the Defendant who have either been terminated for refusing the vaccine due to religious beliefs or had their religious accommodation unlawfully denied and/or denied without proper procedures for review of the denial in place. *Id.* These claims remain.

Moreover, Plaintiff sufficiently raised a claim for mental and emotional anguish caused by the conduct of Defendant in initially unlawfully denying his religious accommodation. [Doc. # 10, ¶ 15, 84, 96, also see Prayer for Relief ¶ H.], also see *Seay v. Tennessee Valley Authority,* 340 F.Supp.2d 844, 850 (E.D. Tn. 2004) (party that brought Title VII claim and mental and emotional claim but simply stating, … he was being subjected to racial harassment and discrimination. In the appended statement, Seay stated that the TVA Inspector General's office "was used only as a mechanism to further harass me with the purpose of causing substantial emotional distress directed

at me which served no legitimate purpose."). *Seay* 340 F.Supp.2d at 850. In Plaintiff's complaint the mental and emotional anguish claim was not raised as an independent claim, nor does it have to be, as it falls under damages obtainable through Title VII. *Id.*

Finally, Defendant's voluntary cessation of its unlawful conduct after being sued by Plaintiff does not remove Article III standing from this case. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189-190 (2000). It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite,* 455 U.S., at 289, 102 S.Ct. 1070. "[I]f it did, the courts would be compelled to leave '[t]he defendant ... free to return to his old ways.' " *Id.,* at 289, n. 10, 102 S.Ct. 1070 (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). By this principle, the standard the United States Supreme Court has announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968). The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. *Ibid.*

A review of the long-recognized exceptions to mootness, however, reveals that the description of mootness as standing set in a time frame is not comprehensive. As just noted, a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur. *Concentrated Phosphate Export Assn.,* 393 U.S., at 203, 89 S.Ct. 361. Here Defendant has secured that right by way of the terms contained in its religious accommodation.

In the case at bar, it is self-evident that Defendant's religious accommodation agreement forced Plaintiff and Mr. Davis to sign that it has reserved the right to return to its unlawful conduct today, tomorrow, next week but for certain in 6 months. In addition, as has been set forth herein Plaintiff sought class certification in this case for employees of Defendant that are still being subjected to this unlawful conduct or were fired for refusing to comply with the unlawful conduct. Finally, Plaintiff also requested declaratory relief on both the Defendant's unlawful acts in denying religious exemptions, the process by which the Defendant denies religious accommodations, and the lack of procedures to appeal such a decision that comports with due process and the legality of the religious accommodation/non-accommodation agreement which provides the Defendant the right to return to its unlawful conduct at any time but for certain in 6 months from the execution date of the agreement.

### III. Plaintiff's Motion to Amend and Proposed Amended Complaint should have been granted.

For the foregoing reasons set forth herein the Plaintiff's Motion to Amend and Proposed Amended Complaint adding Chris Davis should have been granted.

Leave to amend should be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "[I]t should be emphasized that the case law in this Circuit manifests 'liberality in allowing amendments to a complaint.' " *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015). The Proposed Second Amended Complaint should be granted.

While "the grant or denial of an opportunity to amend is within the discretion of the District Court," "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion," but "abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

The Sixth Circuit has held that the denial of a motion to amend without explanation or justification is an abuse of discretion, *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000), unless the reason for the denial of a motion to amend is "readily apparent, particularly in view of the liberal position of the federal rules on granting amendments, " *FDIC v. Bates*, 42 F.3d 369, 373 (6th Cir. 1994) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). "A proposed amendment is futile only if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun*, 871 F.3d at 469 (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). Plaintiff's Proposed Second Amended Complaint clearly can withstand a motion to dismiss for the reasons set forth herein.

For the foregoing reasons herein, Plaintiff's Motion to Amend [Doc # 23] should have been granted.

### IV. Defendant's recent accommodation/non-accommodation to Plaintiff does not render the Proposed Second Amended Complaint moot or futile nor does it remove the need for a Preliminary Injunction as to Plaintiff and all other similarly situated Cardinal Health employees as the sham accommodation states by its own words it can be revoked at any time or in six months-time it can be re-evaluated and denied should the Defendant, in its sole discretion, determine to do so.

Plaintiff's Proposed Second Amended Complaint is not futile because Defendant's purported religious accommodation to Defendant's Covid-19 Vaccine Mandate is **an accommodation without accommodation** and is nothing but a complete fallacy perpetrated on this Honorable Court. As noted in the Statement of Facts above and as is the record in this case clearly shows, the Defendant, after having first denied Plaintiff's religious accommodation to

avoid taking the vaccine or lose his job, after having been served with the original Complaint [Doc. # 1] only thereafter did Defendant grant Plaintiff's religious accommodation request. **Emphasis added**. The Court must note the following again:

> Plaintiff, and all other similarly situated employees, that had their religious exemption requests initially denied by the Defendant, and after this complaint was filed and served on the Defendant, Defendant did an about-face about the Plaintiff and decided to grant Plaintiff's exemption request **but only on the contingency that it has a life span of six months. The document provided to Plaintiff by his employer also contains the following language, "The accommodations provided herein may be modified or eliminated in the event that changes in your condition impact your ability to perform the essential functions of your position, or if the accommodations at any time impose an undue hardship on the Company."** Regarding all other similarly situated employees who may not have been granted an exemption to the COVID-19 Mandatory Vaccination Policy, said employees will lose their jobs if they fail to take the vaccination.

[Doc. # 10, ¶ 7, also see, Exh. J.]. **Emphasis added.**

Likewise, Mr. Davis was not made aware of his ability to seek a religious exemption to the Defendant's Covid-19 Vaccine Mandate until after he filed and served his Motion to Amend on opposing counsel. [Doc. # 23][5]. Mr. Davis' religious accommodation application has not been granted at this time and as the Defendant's admissions make crystal clear they can deny the application for any reason. *Id.* To reiterate, this Defendant has said in its own words in the record that it can take away the religious accommodation at its sole discretion. *Id.* This is not an accommodation; it is, at best, smoke and mirrors.

In addition, Defendant raised in its response to the Plaintiff's Motion for Leave to Amend [Doc. # 26] that the proposed Second Amended Complaint is moot because the proposed Second Amended Complaint, after it was served on Defendant's counsel through the ECF, all of the sudden a Cardinal Health upper management employee advised that the proposed additional class plaintiff, Mr. Davis, would not be terminated on January 4, 2022, again after Defendant had been served with the Motion to Amend [Doc. # 26].

---

[5] These facts are disputed between Mr. Davis and the Defendant.

The harm raised in Plaintiff's Complaint, as well as the First Amended Verified Class Action Complaint and the yet to be granted Second Amended Complaint is subject to repetition while evading review at the Defendant's sole discretion. The claims made herein are not strictly applied to the Plaintiff but are as the original complaint stated applicable to all other similarly situated employees of the Defendant so in sum Plaintiff's Complaint, First Amended Verified Class Action Complaint, and Proposed Second Amended Complaint are not uniquely tied to the Plaintiff and proposed additional Plaintiff only but also other employees of the Defendant being subjected to the same unlawful conduct raised herein. Moreover, this issue of accommodation/non-accommodation in Defendant's own words is ongoing! This case is ongoing not only because the Defendant's religious accommodation to its Mandatory Covid-19 Vaccination is a sham with employees (potential class plaintiffs) being fired daily for refusal to take the vaccine for religious purposes, the Defendant has made clear that their illegal conduct is open to repetition by its admission in its accommodation document it makes its employees sign to keep their jobs (perhaps only the employees that file suit to save their jobs) and finally because the Plaintiff has sufficiently pled that he has suffered at the hands of the Defendant severe mental and emotional anguish as a result of the Defendant's illegal conduct, as well as under Title VII.

Under Article III of the Federal Constitution, the federal courts can only decide "Cases" or "Controversies." U.S. Const. art. III, § 2. So the federal courts adjudicate "only genuine disputes between adverse parties, where the relief requested would have a real impact on the legal interests of those parties." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006). Thus, "[i]f 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome,' then the case is moot and the court has no jurisdiction." *Id.* (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).

To be capable of repetition but evading review, a dispute must satisfy a two-pronged test. First, the challenged action must be too short in duration for the parties to fully litigate it before it becomes moot. And second, there must be "a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right To Life*, 551 U.S. at 462, 127 S.Ct. 2652 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). In other words, "[t]o be capable of repetition, 'the chain of potential events does not have to be air-tight or even probable.'" *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560 (quoting *Barry v. Lyon*, 834 F.3d 706, 716 (6th Cir. 2016)). Still, "a mere physical or theoretical possibility" that the events prompting the suit will come back is not enough. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). So, a case "is not capable of repetition if it is based on a unique factual situation." *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560; *see also Libertarian Party of Ohio*, 462 F.3d at 584.

Moreover, Article III, § 2 of the United States Constitution vests federal courts with jurisdiction to address "actual cases and controversies." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (citing U.S. CONST. art III, § 2). Federal courts are prohibited from rendering decisions that "do not affect the rights of the litigants." *Id.* (citing *Southwest Williamson County Cmty. Assoc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)). This is broadly known as the justiciability doctrine and encompasses the concepts of mootness and ripeness. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *See Cleveland Branch, N.A.A.C.P. v. City of Parma, OH,* 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)).

In other words, the mootness doctrine posits that cases, which, due to changed circumstances, can no longer impact the interests of the litigants, may not be adjudicated in the federal courts. *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (finding moot plaintiff's case challenging the constitutionality of a state law school's admissions process where the plaintiff was nearing completion of his final year in law school when the case reached the United States Supreme Court for review and he would not go through law school admission process again). Finally, the "heavy burden" of demonstrating mootness falls on the party asserting it. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

However, if mootness were simply standing set in a time frame, the exception to mootness that arises when the defendant's allegedly unlawful activity is capable of repetition, yet evading review, could not exist. For example, a mentally disabled patient files a lawsuit challenging her confinement in a segregated institution, her post-complaint transfer to a community-based program will not moot the action, *Olmstead v. L.C.,* 527 U.S. 581, 594, n. 6, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), despite the fact that she would have lacked initial standing had she filed the complaint after the transfer. Standing admits of no similar exception; if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum. See *Steel Co.,* 523 U.S., at 109, 118 S.Ct. 1003 (" 'the mootness exception for disputes capable of repetition yet evading review ... will not revive a dispute which became moot before the action commenced'") (quoting *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991)).

Indeed, a defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528

U.S. 167, 174 (2000). Where the defendant voluntarily ceases the challenged conduct, the defendant must establish that: "there is no reasonable expectation that the alleged violation will recur"; and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021) (quoting *Speech First v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019)). We caution that "[t]he burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953)).

In addition, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *Diamond Pennsylvania State Education Association,* 399 F.Supp.3d 361, 385 (W.D. Penn. 2019), citing *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *see Already,* 568 U.S. at 91, 133 S.Ct. 721 ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."; *Friends of the Earth,* 528 U.S. at 174, 189, 120 S.Ct. 693; *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). This exception to the mootness doctrine exists because, in its absence, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.*

As the United States Supreme Court has opined in *Walling v. Helmerich & Payne,* 323 U.S. 37, 42 (1944). "One final point remains. Petitioner here filed a complaint in the District Court seeking, in part, an injunction to compel respondent to cease its use of the split-day contracts. Two months after the complaint was filed, but before the case came on for trial, respondent discontinued the use of these contracts and substituted different compensation plans not now before us. *Walling,* 323 U.S. at 42. The District Court, however, denied the injunction on the merits insofar as the

split-day contracts were concerned, and the court below affirmed on a like basis. *Id.* at 42-43. In granting certiorari upon the question of the legality of the split-day plan we asked for a discussion of the question whether respondent's discontinuance of the plan rendered the case moot. *Id.* at 37. We hold that the case is not moot under these circumstances. *Id.* at 42-43. Despite respondent's voluntary cessation of the challenged conduct, a controversy between the parties over the legality of the split-day plan still remains. *Id.* at 42-43. Voluntary discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power. See *Hecht Co. v. Bowles,* 321 U.S. 321, 327, 64 S.Ct. 587; *Otis & Co. v. Securities and Exchange Commission,* 6 Cir., 106 F.2d 579, 583, 584. Respondent has consistently urged the validity of the split-day plan and would presumably be free to resume the use of this illegal plan were not some effective restraint made. *Id.* There is thus 'an actual controversy, and adverse interest,' *Lord v. Veazie, 8 How,* 251, 255, 12 L.Ed. 1067, with a 'subject-matter on which the judgment of the court can operate,' *Ex parte Baez,* 177 U.S. 378, 390, 20 S.Ct. 673, 677, 44 L.Ed. 813; *St. Pierre v. United States,* 319 U.S. 41, 42, 63 S.Ct. 910, 911, 87 L.Ed. 1199, also see *Sullivan v. Benningfield,* 920 F.3d 401, 411 (6th Cir. 2019) (A defendant's voluntary cessation of a challenged practice moots a case only in the "rare instance" where "subsequent events make it *clear* that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.' " *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008)). *Emphasis added.*

In the case art bar, it is undisputed that Plaintiff had the standing to file this lawsuit and did file this suit and serve Defendant before Defendant voluntarily ceased its unlawful conduct. [Doc # 1 and Doc #10 – as amended relate back – Fed. R. Civ. P. 15]. In addition, and as the record also reflects, by the admission of the Defendant herein, not only is the Defendant's illegal conduct

as outlined in Plaintiff's Amended Complaint and Proposed Second Amended Complaint fully capable of being repeated going forward, the Plaintiff and all other similarly situated employees (the prospective class plaintiffs) of the Defendant are guaranteed to either be fired, forced to take the vaccine and/or go through the religious accommodation process again, either immediately or in six-months-time and at such time they may be denied their religious freedom and terminated from the job as a result thereof.

Plaintiff's Proposed Second Amended Complaint is not futile as Plaintiff's claims and that of the class plaintiffs are not moot and the Second Amended Complaint should be granted.

### V. Defendant failed to engage in the interactive process under Title VII.

Title VII prohibits employers from discriminating against employees based on religion, among other things. 42 U.S.C. § 2000e-2(a). Claims of religious discrimination under Title VII are analyzed under a two-part framework. *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004). First, a plaintiff must make a *prima facie* case "that a *bona fide* religious practice conflicts with an employment requirement and was the reason for the adverse employment action." *Id.* Second, if the plaintiff establishes a *prima facie* case, "the burden then shifts to the employer to show that it offered a reasonable accommodation," or if it did not, "that doing so would have resulted in an undue hardship." *Id.*

The Supreme Court has noted that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (internal citation omitted).

In the case at bar, the record sets forth that Plaintiff's religious accommodation was initially summarily dismissed with no avenue to appeal that decision. [Doc # 10, ¶ 6-8; 90-98]. Defendant

has not provided any proof in this case that they have met the requirements of Title VII's interactive process. See Record. Plaintiff's First Amended Verified Class Action Complaint sets forth facts that Defendant has violated the interactive process in reviewing religious accommodation requests regarding its Covid-19 Vaccine Mandate. *Id.* Even more alarming, Plaintiff's First Amended Verified Class Action Complaint sets forth sufficient allegations that Defendant has not applied its religious accommodation equally among its employees. [Doc # 10, ¶ 6-8, 10, 29, 33, 34, 35-45; 90-98]. Finally, it is averred in the Plaintiff's First Amended Verified Class Action Complaint that there is no system in place for the similarly situated class plaintiffs to appeal a denial of their religious accommodation or their termination for refusing to take the vaccine due to deeply held religious beliefs. *Id.*

Plaintiff's claims and that of the similarly situated individuals for violation of Title VII are not moot and the harm is ongoing.

**WHEREFORE, PREMISES CONSIDERED, THE PLAINTIFF'S RULE 59 MOTION SHOULD BE GRANTED AND AMENDED TO DENY DEFENDANT'S MOTION TO DISMISS, GRANT PLAINTIFF'S MOTION TO AMEND AND CONSIDER THE MOTION FOR CLASS CERTIFICATION FILED THEREAFTER.**

Respectfully submitted,

s/Russ Egli
Russ Egli
**The Egli Law Firm**
Co-Counsel for the Plaintiff
The Wisdom Building
11109 Lake Ridge Drive, FL3
Concord, TN 37934
865-304-4125
russegliatty@tds.net

s/Darren V. Berg
Darren V. Berg
**Law Offices of Darren V. Berg**
Lead Counsel for Plaintiff
P.O. Box 453
Knoxville, TN 37901
865-773-8799
dberglawfirm@gmail.com

*Counsel for Plaintiff*

## ECF CERTIFICATE OF SERVICE

I, the undersigned authority, certify that this pleading has been sent to all counsel of

Record through the Court's ECF filing system.

s/Russ Egli
Russ Egli
Co-Counsel for the Plaintiff